UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-23011-ALTMAN

**VASALLO TV GROUP, LLC**, *et al.*,

    *Plaintiffs*,

v.

**AMERICA-CV STATION GROUP, INC.**, *et al.*,

    *Defendants.*

_____/

## ORDER DENYING MOTION FOR STAY PENDING APPEAL

Just before the Chapter 11 reorganization plans of Caribevision Holdings, Inc. and Caribevision TV Network, LLC were set to be confirmed, "the debtors filed an emergency motion to modify the plans under 11 U.S.C. § 1127(a)." *In re America-CV Station Grp., Inc.*, 56 F.4th 1302, 1305 (11th Cir. 2023). The initial plans called for "equity in the reorganized companies to be split between four shareholders: Ramon Diez-Barroso, Pegaso Television Corp., Emilio Braun, and Vasallo TV Group." *Ibid.* The modification, after being approved by the bankruptcy court, "stripped the first three of their equity and allocated full ownership to the fourth—a company controlled by the debtors' Chief Executive Officer," Carlos Vasallo. *Ibid.* The three ousted shareholders, whom we'll call the "Pegaso Equity Holders," appealed the Bankruptcy Court's order confirming the plan modification to the Eleventh Circuit—and won. *Id.* at 1313–14 (reversing the Bankruptcy Court's order confirming the modified plans). But, by the time the Pegaso Equity Holders were vindicated on appeal, two years had elapsed since the Bankruptcy Court had confirmed the initial, now-remanded plans. So, when the Eleventh Circuit remanded this case to the Bankruptcy Court, it noted that it was "assum[ing] . . . that effective judicial relief [could] be granted" and left it to the Bankruptcy Court to "fashion an equitable remedy." *Id.* at 1313.

On remand, the Bankruptcy Court directed the parties to devise and agree on a procedure it could use to determine the appropriate equitable remedy. The parties did so. Afterwards, the Bankruptcy Court determined that the equitable remedy was to take back the equity it had previously allocated to Mr. Vasallo and his Vasallo TV Group—we'll call this the "New Equity Interests"—and allocate it to the Pegaso Equity Holders instead. Supplemental Remand Order [Bankr. ECF No. 547] at 10, *In re America-CV Station Grp.*, No. 19-16355 (Bankr. S.D. Fla. May 31, 2024).[1] It also concluded that Mr. Vasallo and Vasallo TV Group hadn't behaved equitably—and so, they weren't entitled to any equitable benefit or protection. Remand Order [Bankr. ECF No. 510] at 27–31.

Mr. Vasallo and the Vasallo TV Group appealed the Bankruptcy Court's decision to us. *See* Notice of Appeal [ECF No. 1]. They've also moved to stay the Bankruptcy Court's decision while this appeal is pending. *See* Appellants' Motion for Stay Pending Appeal (the "Stay Motion") [ECF No. 10]. The Pegaso Equity Holders, our Appellees, oppose the Motion. *See* Response to Stay Motion [ECF No. 12]. The Appellants filed a Reply. *See* Reply [ECF No. 14]. For the following reasons, we **DENY** the Motion.

## THE LAW

A stay pending appeal "is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up). It's an "extraordinary remedy that's only 'granted upon a showing of four factors: 1) that the movant is likely to prevail on the merits on appeal; 2) that absent a stay the movant will suffer irreparable damage; 3) that the adverse party will suffer no substantial harm from the issuance of the stay; and 4) that the public interest will be

---

[1] Although the Appellants filed Appendices to their brief, *see* Appendices Vols. I–VI [ECF Nos. 23–28], the Appendices unhelpfully organize the relevant documents by bankruptcy ECF number and don't contain appendix numbers. For simplicity, we'll cite to entries on our docket as [ECF No. XX] and entries on the Bankruptcy Court's docket as [Bankr. ECF No. XX].

served by issuing the stay." *City Nat'l Bank of Fla. v. La. Apple, LLC*, 2024 WL 5372674, at *1 (S.D. Fla. Oct. 8, 2024) (Altman, J.) (citing *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986)); *see also In re Jet 1 Ctr., Inc.*, 2006 WL 449252, at *1 (M.D. Fla. Feb. 23, 2006) (Steele, J.) (holding that this test applies to appeals arising under Federal Bankruptcy Rule of Procedure 8005).

"Among these four factors, the first and second 'are the most critical.'" *Florida v. United States*, 2023 WL 3813774, at *1 (11th Cir. June 5, 2023) (quoting *Nken*, 556 U.S. at 434–35). Ordinarily, the first factor can only be satisfied when the movant "demonstrates a *probable likelihood* of success on the merits"—much more than a mere possibility. *Garcia-Mir*, 781 F.2d at 1453 (emphasis added). If the stay applicant makes just a "lesser showing" of a "substantial case on the merits," we may grant a stay only if the "*balance* of equities" (as outlined in the three other factors) "weighs heavily in favor of granting the stay." *United States v. Hamilton*, 963 F.2d 322, 323 (11th Cir. 1992) (emphasis added). Similarly, a stay applicant doesn't carry its burden as to the second factor by demonstrating "the mere possibility . . . of irreparable injury," *Democratic Exec. Comm'n of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019) (quoting *Nken*, 556 U.S. at 434–35), or even the *certainty* that it'll face a "serious burden" if the stay isn't granted, *see Nken*, 556 U.S. at 435 ("Although removal is a serious burden for many aliens, it is not categorically irreparable[.]"). The harm "must be neither remote nor speculative, but actual and imminent," and it must be genuinely irreparable. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

"[A]n order on a motion for stay pending appeal is not a resolution of the appeal itself." *Jacksonville Branch of NAACP v. City of Jacksonville*, 2023 WL 119425, at *3 (11th Cir. Jan. 6, 2023) (collecting cases). So, irrespective of how we adjudicate a party's motion to stay pending appeal, "we are not making any pronouncements on the merits of the [ ] appeal." *Ibid.*

3

**ANALYSIS**

**I.     The Appellants Aren't Entitled to a Stay**

While the Appellants have made at least a substantial case on the merits on one of their three arguments, they fail to carry their burden on any other factor. They're therefore not entitled to a stay.

**a.  Likelihood of Success on the Merits**

The Appellants insist that they're likely to prevail on their three merits arguments: *first*, that the Bankruptcy Court has no subject-matter jurisdiction; *second*, that the Bankruptcy Court committed "manifest error" in reaching certain factual conclusions after an evidentiary hearing; *third*, that the Bankruptcy Court misapplied the summary-judgment standard. On a preliminary assessment of these arguments, we think the Appellants are most likely to succeed only on their third argument.

**i.  Subject-Matter Jurisdiction**

*First*, the Appellants fail to show that they're likely to succeed on their subject-matter-jurisdiction argument. The Eleventh Circuit has helpfully summarized the three categories of bankruptcy jurisdiction—"arising under," "arising in," and "related to":

> Under § 1334, district courts have 'original but not exclusive jurisdiction' of three categories of civil proceedings: (1) those 'arising under title 11,' which is the portion of the U.S. code devoted to bankruptcy; (2) those 'arising in . . . cases under title 11'; and (3) those 'related to cases under title 11.' *Id.* § 1334(b). A district court may refer these matters to the bankruptcy court, which exercises jurisdiction 'derivate of and dependent upon' the district court's jurisdiction.

*In re Kachkar*, 769 F. App'x 673, 679 (11th Cir. 2019). "For a civil proceeding to be 'related to' a bankruptcy case, there must be 'some [close] nexus between the related civil proceeding and the Title 11 case.'" *Ibid.* (quoting *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 787 (11th Cir. 1990)). Related-to jurisdiction is a "broad jurisdictional grant that encompasses cases that could conceivably have an effect on the estate being administered in bankruptcy and includes any action which in any way impacts upon the handling and administration of the bankrupt estate." *Ibid.* (cleaned up). "Matters that affect

the interpretation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Ibid.*

The Appellants' theory is that the Bankruptcy Court's subject-matter jurisdiction "came to an end" when the New Equity Interests were issued to Vasallo TV. Since the Bankruptcy Court's jurisdiction is fundamentally *in rem*, and since the (now-reversed) plan of confirmation transferred the New Equity Interests out of the estate, the Appellants believe that the Bankruptcy Court doesn't have jurisdiction to effectuate the equitable relief the Eleventh Circuit has contemplated.

The problem for the Appellants is that the Eleventh Circuit reversed the Bankruptcy Court's confirmation order to the extent that order transferred the New Equity Interests out of the estate. Without deciding at this juncture whether the Eleventh Circuit's decision voided the transfer—or whether it simply gave the estate a right to recover its equity from parties who were never supposed to take possession of it—we think it's obvious that the Bankruptcy Court has at least related-to jurisdiction. It's true that, in the ordinary plan-confirmation context, the Bankruptcy Court's jurisdiction "diminishes with plan confirmation." *In re Kachkar*, 769 F. App'x at 679. But that's only because, after a plan has been confirmed and the reorganized debtor "start[s] off on a new and to-be-hoped-for more successful career, . . . [i]t is not consonant with the purposes of the [Bankruptcy] Act, or feasible as a judicial function, for the courts to assume to supervise a business somewhat indefinitely." *In re Jeffrey L. Miller Invs., Inc.*, 624 B.R. 913, 920 (Bankr. M.D. Fla. 2021) (quoting *N. Am. Car Corp. v. Peerless Weighing & Vending Mach. Corp.*, 143 F.2d 938, 940 (2d Cir. 1944)). Here, though, the portion of the confirmation order that's at issue was reversed on appeal, and the Eleventh Circuit tasked the Bankruptcy Court with reallocating the estate's equity in an equitable manner. Reallocating the estate's equity plainly "[has] an effect on the estate being administered in bankruptcy" and "impacts upon the handling and administration of the bankrupt estate." So, we're not at all persuaded that the Bankruptcy Court lacks subject-matter jurisdiction here.

5

### ii. The Bankruptcy Court's Supposed Clear Error on the Facts

*Second*, the Appellants fail to show that the Bankruptcy Court committed "manifest error" by concluding, contrary to evidence presented at an evidentiary hearing, that the Pegaso Equity Holders "not only could, but did, perform all required obligations under the Plans prior to the Confirmation Date." Mot. at 8. We won't linger on this argument because, as the Appellants concede on Reply, there *was* testimony supporting the Bankruptcy Court's determination. In their own words, their objection is that the Bankruptcy Court "accepted [certain] self-serving testimony . . . instead of [other] testimony" that (the Appellants believe) the documents supported. Reply at 7. But, "when we examine the facts adduced at trial, generally we will not disturb a bankruptcy court's credibility determinations." *In re Kane*, 755 F.3d 1285, 1288 (11th Cir. 2014); *see also In re Englander*, 95 F.3d 1028, 1030 (11th Cir. 1996) (noting that a district court "must . . . give due regard to the bankruptcy court's opportunity to judge the credibility of the witnesses"). To be clear, we're not saying that the Bankruptcy Court *definitely* got it right. Perhaps, an exhaustive review of all the transcripts and the evidence *might* lead us to conclude that it did. And, even if we determine that the Bankruptcy Court made no error on the facts, we *might* draw a different *legal* inference from those facts. All we're saying here, then, is that the Appellants aren't *likely* to succeed on the merits where their argument depends on us overriding the Bankruptcy Judge's choice between two interpretations of the evidence that are, at best, somewhat equally plausible.

### iii. The Misapplication of the Summary-Judgment Standard

The Appellants' third argument fares best. Here, they complain that they were entitled to an evidentiary hearing on a certain disputed question of fact—namely, whether Mr. Vasallo lacked clean hands such that he's not entitled to equitable relief under the Eleventh Circuit's remand. As we explained, after the case was remanded, the Bankruptcy Court asked the parties to devise a procedure by which it could determine whether either side was entitled to equitable relief. It seems that the parties

6

ultimately agreed that the Bankruptcy Court should use the summary-judgment standard to decide whether to hold an evidentiary hearing to resolve disputed questions of fact:

> Bankruptcy Court: I didn't get the feeling that either one of you disagrees that the summary judgment standard is the one that I should be applying to determine whether I need to hold an evidentiary hearing.
>
> Appellees' Counsel: I think that's right, but I think we may disagree on what that means. I'll come back to that.
>
> Bankruptcy Court: Well, either the summary judgment standard is being applied or it's not being applied. So what's your position?
>
> Appellees' Counsel: It's being applied.
>
> Bankruptcy Court: Okay, good. Then that's one less thing we have to talk about.

Tr. of Nov. 28, 2023 Hr'g [Bankr. ECF No. 497] at 7:12–25. Under a summary-judgment standard, of course, the Bankruptcy Court wouldn't have been able to resolve disputes of fact. After receiving evidence and briefing from the parties, the Bankruptcy Court ultimately concluded—*without a hearing*—that Mr. Vasallo didn't act in good faith when he directed the Debtors to modify the confirmation plan. In saying so, it made much of a statement from Mr. Vasallo's deposition, in which he directly explained his motivation for modifying the plan:

> Q. Okay. Who was involved in the decision to make the modification?
>
> A. Myself.
>
> Q. Anybody else?
>
> A. No.
>
> Q. All right. And why did you make that decision?
>
> A. Because they [the Appellants] don't want to collaborate with the company and the company to survive. I know this is going to be a nightmare if they have the opportunity to put the money on time.

Dep. Tr. of Carlos Vasallo [Bankr. ECF No. 469] at 52:24–53:8.

7

The Bankruptcy Court took Mr. Vasallo's last answer as proof that his "driving concern" was not losing control of the Debtors, and that he'd ordered the plan modification as part of a course of action "designed to benefit him personally" by allowing him to retain control over the Debtors. Remand Order at 30–31. The Appellants complain that other material in the record, including other testimony in the same deposition, tends to show that Mr. Vasallo was not driven by his self-interest, and that he felt he was acting for the best interests of the Debtors and the creditors. *See* Mot. at 5–6 (listing various pieces of record material). The thrust of their argument is that, because the Bankruptcy Court chose between two equally plausible inferences from the record material without holding an evidentiary hearing, it deprived them of the benefit of the summary-judgment standard and the process to which they'd agreed. *See id.* at 7 ("Once the competing evidentiary items were before the Court, and the conflicts cited above were present, the Court was obligated to deny summary judgment and provide the parties an evidentiary hearing on the merits.").

In response, the Appellees argue, more or less, that the Appellants somehow waived their right to an evidentiary hearing by agreeing to a process in which they left it entirely to the Bankruptcy Court to decide whether a hearing was necessary:

> As the bankruptcy court noted, the Remand Parties agreed to the specific processes by which the bankruptcy court would fashion a remedy pursuant to the Eleventh Circuit's Mandate. Those processes provided Appellants with a full and complete ability to develop a factual record and present their legal arguments on remand. Appellants took full use of those opportunities, spending more than a year and a half litigating every ruling, issue, and order from the bankruptcy court. Any argument claiming lack of due process is legally and factually meritless.

Resp. at 11–12. The Bankruptcy Court expressed a similar view when the Appellants sought reconsideration of its order:

> [I]t appears that the crux of your ar[gument] . . . is that notwithstanding the determination by all parties that here was no need

8

> for an evidentiary hearing unless I, the Court, determined that I needed evidence on something, that notwithstanding that, it was my responsibility when I saw this different part of Mr. Vasallo's testimony, that somehow that meant that I had to determine that I needed to have an opportunity for Mr. Vasallo to come in and testify to the very things that he testified to under oath at his deposition. That to me does not—is not supported by the law.

Tr. of July 22, 2024 Hr'g [Bankr. ECF No. 562] at 32:20–33:13.

At this stage, we haven't fully reviewed the record and considered every piece of material on which the Bankruptcy Court relied. But we're inclined to agree with the Appellants that the Bankruptcy Court should have—and didn't—apply a summary-judgment standard here. Whether Mr. Vasallo acted in bad faith substantially determines the Appellants' rights to equitable relief. So, to the extent portions of Mr. Vasallo's testimony about his motivations conflicted with each other or with other record material, there was a dispute of material fact. The parties agreed that the Court should apply a summary-judgment standard to decide whether to hold an evidentiary hearing; confronted with a dispute of material fact, the Bankruptcy Court should have held an evidentiary hearing. Had the Bankruptcy Court done so, it would have had substantial discretion to determine Mr. Vasallo's credibility and motivations—and to believe certain parts of his testimony over others. It didn't, so on this fairly narrow portion of their appeal,[2] we think the Appellants have articulated at least a substantial likelihood of success on the merits.

### b. Probability of Irreparable Harm to the Movant

Even if we accept that the Appellants are likely to prevail on the merits of one of their arguments, however, they fail to carry their burden on *any* of the other factors—especially on the "critical" probability that they'll face irreparable harm if a stay isn't granted. The Appellants claim that

---

[2] We characterize this argument as narrow because, even if the Bankruptcy Court erred on the process it should have afforded the Appellants on the question of good faith—and we haven't decided that it did—that wouldn't affect its finding that the Pegaso Equity Holders complied with their obligations and that it was therefore equitable to award them the New Equity Interests.

9

they'll be subject to irreparable harm because the Appellees will "file baseless claims of breaches of fiduciary duty and other causes" in state court. Mot at 22. They cite a "Civil Theft Demand Letter" as proof of these supposedly impending lawsuits, claiming that the Demand Letter shows that the lawsuits "are not [mere] threats." Reply at 7. Of course, a demand letter is rather obviously just a threat of litigation—and merely threatened litigation is rather obviously not "actual and imminent." They also speculate that these hypothetical state-court lawsuits "will undoubtedly result in the end of the Reorganized Debtors' business operations such that the entities will not exist upon conclusion of the appeal[.]" Mot. at 22. But they don't explain how or why all of that will happen. Nor do they explain why money damages—especially sanctions—wouldn't compensate them for truly "baseless" lawsuits. *See Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies.").[3] We therefore conclude that the Appellants have failed to carry their burden of showing that they'll be irreparably harmed.

### c. Probability of Substantial Harm to the Non-Movant

Nor have the Appellants carried their burden of showing that no substantial harm will come to the Appellees. In summary fashion—three sentences, only one of which advances an argument—they contend that granting a stay won't harm the Appellees because it'll merely preserve the status quo. Mot. at 22 ("Here, granting a stay will not cause substantial harm to the [Pegaso Equity Holders]. To the contrary, the status quo will remain in place, and no harm will result from staying execution of the Supplemental Order on Remand."). Of course, preserving the status quo would seem to leave the Appellants in possession of significant estate property to which they were *never* entitled. The Appellees, for their part, claim that they'll be harmed because the Appellants will "undertak[e] a 'scorched Earth

---

[3] They also claim—again, muddily and tersely—that not granting a stay pending appeal will "likely" interrupt "the use of the broadcasting antenna that permits the[ir] television stations to operate," and that undoing the transfer of the New Equity Interests "may" jeopardize their FCC license. Even if the Appellants had bothered to explain how or why any of this would happen, harm that's merely "likely" (or that "may" occur) isn't actual or imminent.

10

[sic] policy'" and try to destroy the value of the New Equity Interests rather than turn them over. Resp. at 19. Although that strikes us as speculation as well, it suffices for today's purposes that the Appellants have plainly failed to bear *their* burden on this factor.

### d. The Public Interest

Finally, the Appellants practically concede that there's no real public interest in this case. Acknowledging that this is a case between private parties, the best they can muster is that "[i]ssuing a stay will not *disserve* the public interest[.]" Mot. at 23. That's not nearly enough to carry their burden. As bankruptcy courts in our Circuit have observed, there is a "'great public policy' in ensuring that bankruptcy cases continue to 'an orderly, efficient resolution to maximize and preserve the estate's assets.'" *In re F.G. Metals, Inc.*, 390 B.R. 467, 478 (Bankr. M.D. Fla. 2008); *see also In re Sessions*, 622 B.R. 102, 108 (Bankr. S.D. Ala. 2020) (same). Because the Eleventh Circuit remanded this case for the Bankruptcy Court to determine some equitable remedy—and since the Bankruptcy Court in fact has jurisdiction to issue that remedy—the public interest is plainly served by our not needlessly obstructing the proceedings below.

\*   \*   \*

As the Supreme Court and the Eleventh Circuit have admonished, a stay pending appeal is an "extraordinary remedy," *Garcia-Mir*, 781 F.2d at 1453, "not a matter of right," *Nken*, 556 U.S. at 427. The likelihood of success on the merits is a "critical" factor—but so is the likelihood of irreparable injury to the movant. Although we have discretion to balance the four factors, we don't believe it's an appropriate exercise of that discretion to issue a stay where the Appellants have carried their burden as to just one of the four factors.

11

Accordingly, we hereby **ORDER** and **ADJUDGE** that the Appellants' Motion to Stay Pending Appeal [ECF No. 10] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on March 18, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record